LORENZO D. BLANCHARD, Appellant, *v.* HOBOKEN LAND AND IMPROVEMENT CO., Respondent.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Corporations.*—Chapter 260, Laws of 1888, entitled "An Act in relation to ferries," does not apply to foreign corporations.
2. *Same. Obligation to post rates.*—Where there are no rates fixed by law for a foreign corporation, there is no obligation on its part to post any schedule.

Appeal from a judgment sustaining a demurrer to the complaint in the action.

*Theo. F. Miller*, for appellant.

*Abbett & Fuller (Henry Schmitt*, of counsel), for respondent.

VAN BRUNT, P. J.—This action was brought to recover the aggregation of a number of penalties claimed under a statute passed by the legislature on the 9th of May, 1888 (being chapter 260 of the Laws of 1888). The act is as follows:

"AN ACT IN RELATION TO FERRIES."

"The People of the State of New York, represented in Senate and Assembly, do enact as follows:

"Section 1. Within thirty days after the passage of this act, every person, corporation or association owning, leasing, operating or controlling any ferry in this state, or between this state and any other state, operating from or to a city of fifty thousand inhabitants or over, shall post in a conspicuous and accessible position outside of and adjacent to each entrance to such ferry, and in at least four accessible places, in plain view of the passengers upon each of the boats used on said ferry, a schedule plainly printed in the English language, of the rates of ferriage charged thereon and authorized by law to be charged for ferriage over said ferry.

"§ 2. If any such person, corporation or association shall fail to comply with the provisions of section 1 of this act, or shall post a false schedule, they shall be guilty of a misdemeanor, and in addition shall forfeit and pay the sum of fifty dollars for each and every day they shall neglect or refuse to post such schedule, or any of them, to be recovered by any person who shall sue therefor in any court of competent jurisdiction.

"§ 3. This act shall take effect immediately."

The complaint alleges that the defendant is a foreign corporation, organized under the laws of New Jersey, and that it operated a certain ferry from and to the city of New York, which last named city contained 50,000 inhabitants or over. This ferry was known as the Hoboken ferry, with

slips at the foot of Barclay, Christopher and Fourteenth streets, in the city of New York. The complaint then set forth the act in question, and alleged that it became a law on the 9th of May, 1888, and that the corporation had utterly failed to comply with the provision of the act since its passage, and that such failure of compliance had continued for 115 days, and judgment was demanded for the modest sum of $17,250, to be recovered by the plaintiff because of this alleged violation of this act.

The defendant demurred to the complaint upon the ground that the complaint does not state facts sufficient to constitute a cause of action. This demurrer was sustained upon the ground that the act in question was not intended to cover foreign corporations.

In this view of the law, we think the learned judge was entirely correct.

It is to be observed that among the penalties which are incurred, by reason of the failure to comply with the law is that of being guilty of a misdemeanor in addition to becoming liable to a fine.

It does not seem possible that the legislature should have contemplated the inclusion of a non-resident corporation in a provision making non-compliance with the act a crime punishable as a misdemeanor, and that it could not have been intended to make foreign corporations guilty of misdemeanors which could not be punished here under any known procedure for the neglect to do something not required of it by its charter, or by any statute of the state under which it has its being. Indeed, under the circumstances, unless there is something which tends to establish such an intention upon the part of the legislature, no such construction can be placed upon the act. Full force and effect can be given to it by making it apply to corporations over which the legislature of this state have control. The intention, undoubtedly, was to require our own corporations, whether doing business entirely within this state or with a

foreign state, to indicate in a public manner how they are respecting our own laws in a given particular.

That the legislature might make such regulations in reference to foreign corporations doing business within the limits of this state, seems to be established by the case of the Railroad Company *v.* Fuller (17 Wall. 567). But until such intention has been more definitely and plainly expressed than is done in the act in question, no such interpretation can be placed thereon.

There is another consideration which seems to be fatal to the plaintiff's cause of action. The requirement of the statute is that the corporation operating the ferry shall post a schedule of the rates of ferriage charged thereon and authorized by law to be charged for ferriage.

It is clear that if there is no legal regulation of the rates of ferriage, then there are none which can be said to be authorized by law, and by the terms of the act the company is bound to post only the rates of ferriage charged thereon and authorized by law. Consequently, if there are no rates fixed by law, there are none which the ferry company can post, and there is no obligation upon the part of the corporation to post any schedule, because there are no rates authorized by law.

It is no answer to this proposition to say that the word " and " should be construed as the word " or," as is frequently the case in the construction of contracts, and also of legislative enactments, because a defined intention can be gathered from the act which is inconsistent with the application of any such rule of interpretation.

It would seem to have been the intention of the legislature to have required the ferry companies whose rates were restricted by law, to post the schedule so that every person might know precisely what the law allowed the ferry company to charge for transportation. And it was to prevent violations of the law restricting the amount of ferriage that this enactment was passed. But where there was no rate

fixed by law, then there was no reason for the posting, as the carrier had the right to fix its own rates, and fixing the rates as it pleased, there would be no violation of the law, and consequently there was no reason for requiring the posting of rates which they might change by either reduction or augmentation at their will. This being the plain intention of the act, if any reasonable intention is to be imputed to it, it is clear that it had no application to the defendant's ferry, because there is no pretense that there was any legal restriction of its rates of ferriage.

Applying the act to those cases to which the rates of ferriage have been restricted by law, would bring it in harmony with other provisions of law prohibiting railroad companies from charging more than certain rates per mile, and with acts of the legislature passed inflicting penalties for over-charges. Fisher *v.* N. Y. C. R. R. Co., 46 N. Y. 644.

We are of the opinion therefore that the demurrer was well taken, and that the judgment should be affirmed with costs.

DANIELS, J.—I concur on the ground secondly stated in the opinion.